IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

JOSE MORA #81024-020                                 PLAINTIFF

V.                                            CIVIL ACTION NO. 5:11cv178-DCB-JMR

UNKNOWN ROBINSON,
ASSOCIATE WARDEN;
UNKNOWN WOODS, FOOD
SERVICE ADMINISTRATOR;
UNKNOWN EVEREST ASSISTANT
FOOD SERVICE ADMINISTRATOR;
and UNKNOWN NICHOLSON, FOOD
SERVICE WORKER                                 DEFENDANTS

## REPORT AND RECOMMENDATION

This matter is before the Court pursuant to Defendants' Motion [38] to dismiss, or in the alternative, for Summary Judgment which is accompanied by a Memorandum [39] in Support. Plaintiff has not filed a Response in Opposition to the motion. Jose Mora [Mora] has filed a motion for discovery [42] including all documents pertaining to him, including his medical record from October 2007 to May 2008. In addition, Mora filed a motion for reconsideration [50] of his discovery request to extend to a request for medical records from May 2008 to the date of his discovery motion, August 15, 2012. Mora also has an outstanding motion for reconsideration of his motion for appointment of counsel [52.] The Court being fully advised in the premises, and after carefully considering the pleadings filed as a matter of record, along with the applicable law, recommends that the Defendant's Motion [38] for Summary Judgment should be granted, and that the motions for discovery [42, 50] and for reconsideration of Mora's motion [52] for appointment of counsel should be denied.

## Discussion

According to the allegations in the complaint, Mora has specific medical needs and those needs must be met by protein supplements, which were prescribed for him. [1, p. 2.] Mora

contends that the defendants in this case "refuse to follow those instructions." (*Id.*) Mora asserts that administrative remedies have been fully exhausted. [1, p. 3.] Mora asserts that he was denied a protein bag meal on September 15, 2011, by Mr. Nicholson, one of the defendants in this case. [1, p. 4.] He states that the medical staff at the facility wanted him to submit to a blood test to determine if the supplements were needed, but he refused. (*Id.*) He claims the kitchen staff and associate warden "were involved in a conspiracy to deny me my treatment, my health was not their concern." (*Id.*) He contends that certain people stated he would not get a protein diet, despite doctors orders showing the diet to be a medical necessity for him. [1, pp. 5-6.]

On September 15, 2011, Mora submitted an inmate request to staff in which he indicates that he had requested a modified diet to the food service staff which was not honored. [32-11.] The response from M. Robinson, one of the defendants in this case dated September 26, 2011, was as follows:

> You will be closely followed by health services. If your medical condition warrents [sic] a special diet, they will notify food services.

[32-11; 38-17, pp. 2-3.]

Mora submitted another request to staff on September 16, 2011, to K. Lipscomb, Chief Pharmacist. [32-12.] Mora sought a response to his assertion that "the Court order dictates my calcium vitamins and flintstone chewable tablets" be provided by the pharmacy. (*Id.*) In response on September 26, 2011, Lipscomb indicated the following:

> The court order that you refer to in this request to staff was vacated in March of 2008. We are not obligated by law to provide you with these over-the-counter products. I spoke with your primary care provider, Dr. N. Natal. She has placed you on call out and will evaluate your medical condition to determine what medications to prescribe you. In the meantime, since you state you are out of these medications, they are available for purchase in the commissary.

(*Id.*)

The order referenced in this response was entered in the United States District Court for the Eastern District of Virginia which vacated the order regarding Mora's diet and provided that "[t]he Bureau of Prisons may follow the most recent diet requirements established by Drs. Moore and Shah." [38-4.]

Anthony Chambers, M.D., the Director for the Health Services Department at the Federal Correctional Complex [FCC] in Yazoo City, Mississippi, submitted a declaration in which he outlines that Mora arrived at FCC Yazoo City on September 12, 2011. [38-5.] At that time, Mora had a Bureau of Prisons Health Services Medical Duty Status in place which indicated Mora was to receive a snack bag after each meal. [38-6.] The document provided that Mora was "required" to "have a snack bag after each meal which is high in protein, milk, eggs, cheese sandwich or protein that is provided that day. Inmate is allergic to peanut butter." (*Id*.) Mora was evaluated by medical personnel at FCC Yazoo City on September 20, 2011, at which time he indicated that he needed his medications refilled and the high protein snacks renewed. [38-7, p. 2.] Mora was told that a baseline laboratory was required to monitor abnormalities from gastric bypass surgery and informed that he could purchase vitamins from the commissary. (*Id*., p. 4.) Mora refused to have the labs done stating that "there is no need for labs to be done." (*Id*., p. 6; 38-8.)

In a follow-up visit, Mora was prescribed multivitamins, an injection, and complete blood work was ordered. [38-9, p. 5.] When he was called for the lab, he refused treatment, indicating on the medical treatment refusal that "there is a court order in place, staff need to follow the court order of March 2008." [38-10, p. 2; 38-11, p. 2.] Chambers states that he evaluated Mora on December 2, 2011. [38-5, p. 3.] Mora complained to Chambers that he wanted his protein supplement added back into his diet, Chambers informed Mora that the supplement was never discontinued by the medical staff at FCC Yazoo City. [38-5, p. 3.]

3

Chambers renewed the Medical Duty Status for the snack bags as it was set to expire in January 2012. (*Id.*) Chambers also reordered the lab. (*Id.*)

In a followup examination on December 23, 2011, Chambers changed the dietary supplement with a notation that Mora is allergic to nuts and peanut butter as well as lactose intolerant. [38-5, p. 4.] Chambers discussed the lab results with Mora which showed that Mora's protein levels were within the acceptable range. (*Id.*)

On January 29, 2012, Mora had a consultation with the BOP's dietician who indicated that protein provided to Mora at regular meals was more appropriate to Mora's needs, and that the meals plus protein supplements provided adequate nutritional needs. [38-15, p. 4.] The dietician indicated that Mora's protein need was about 70 grams of protein per day. [38-15, p. 3.]

William Woods, Food Service Administrator at FCC Yazoo City, declared that he supervises the preparation and serving of all inmate meals, including medical, religious and regular diets each day. [38-19, p. 2.] Woods stated that he follows the guidelines provided in the BOP's Food Service Manual, which provides that special diet orders are to be specific and complete and are provided to the Food Service Administrator either in writing or via email from the Health Services department. [38-19, p. 3.] Woods complied with the medical directive regarding protein in Mora's diet as soon as he was informed of the need, and participated in consultations with Mora and the BOP Nutritionist, the Clinical Director and Health Services Administrator in an effort to accommodate Mora's nutritional needs. [38-19, pp. 3-4.]

Richard Everest, an assistant Food Service Administrator at FCC Yazoo City, averred that he never denied Mora a snack bag or protein supplement. [38-21, p. 3.] Everest recalled that Mora requested a certain type of food as his extra protein, and Everest told him that Food

Service could not provide him with specific items on request. (*Id*.)

Damien Nicholson, also an assistant Food Service Administrator at FCC Yazoo City, stated that he told Mora he could not accept documentation directly from an inmate and that medical diet orders had to come from the Health Services Department. [38-22, p. 3.] He did tell Mora that he lacked the authority to provide specific items as a protein supplement. (*Id*.)

Glenda Dykes, Legal Instruments Examiner for the BOP, stated that she serves as the Administrative Remedy Clerk for the Southeast Region. [38-23, p. 2.] In this capacity, Dykes states that she is responsible for processing the administrative remedy requests which inmates send to the Southeast Regional Office. (*Id*.) According to the Administrative Remedy records database, Mora filed 83 administrative remedy requests as of February 27, 2012. (*Id*., p. 4.) Although Mora filed remedy requests since his arrival at FCC Yazoo City in September 2011, none of the requests deal with dietary supplementation as of the date of Dykes' declaration. (*Id*.)

On October 4, 2011, Mora filed a BP-9 with the Warden at FCC Yazoo City claiming he was being denied an appropriate medical diet. (*Id*. and 38-24.) The Warden responded to Mora, and Mora filed a BP-10 appealing that response to the Regional Director on October 31, 2011. (*Id*.) The appeal was denied by the Regional Director on December 2, 2011. (*Id*.) Mora then appealed that denial to the BOP Office of General Counsel on December 29, 2011. (*Id*.) Mora had not received a response from that office as of the date of Dyke's declaration. (*Id*.) Dykes states that by failing to allow the Office of General Counsel time to review and consider the appeal, Mora has not properly presented a remedy to all three levels of the administrative review process and therefore, failed to exhaust his administrative remedies. (*Id*.) Mora filed his complaint in this case on December 21, 2011. [1.]

## DISCUSSION

Plaintiff filed his complaint pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971) and 28 U.S.C. § 1331. A *Bivens* action mirrors a civil rights action brought under 42 U.S.C. § 1983, the difference being that a *Bivens* action applies to alleged constitutional violations by federal actors, while a Section 1983 action applies to alleged constitutional violations by state actors. *See Izen v. Catalina*, 398 F.3d 363, 367 n.3 (5th Cir. 2005).

I.  Failure to Exhaust

Under the Prison Litigation Reform Act of 1995 [PLRA], a prisoner is required to exhaust prison grievance procedures before filing suit. 28 U.S.C. § 1915A; 42 U.S.C. § 1997e(a). Prison officials then have an opportunity to resolve disputes regarding prison conditions before a lawsuit is brought. "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a) (2000). Failure to exhaust is an affirmative defense under the PLRA. *Jones v. Bock*, 549 U.S. 199, 211-12 (2007).

In this case, the Defendants assert that Mora has failed to exhaust. [39, pp. 14-16.] The Fifth Circuit has recognized that the exhaustion requirement may be excused in "circumstances where administrative remedies are inadequate because prison officials have ignored or interfered with a prisoner's pursuit of an administrative remedy." *Holloway v. Gunnell,* 685 F.2d 150, 154 (5th Cir. 1982)). Further, a prisoner's failure to exhaust "may be excused where dismissal would be inefficient or would not further the interests of justice or the purposes of the exhaustion requirement." *Underwood v. Wilson,* 151 F.3d 292, 296 (5th Cir. 1998), *overruled on other grounds by Carbe v. Lappin,* 492 F.3d 325 (5th Cir. 2007)). In this case, although Mora filed his

complaint prior to completion of the administrative procedures in place at the BOP, the Court recommends that Mora's failure to exhaust should be excused, because dismissal of the suit without prejudice to await a decision in the administrative proceeding would be a waste of judicial resources. The Court makes this recommendation because Mora has failed to state a viable cause of action, as outlined below.

II.     *Bivens* Action

A *Bivens* claim is a judicially created counterpart to a 42 U.S.C. § 1983 civil rights action and is properly brought only against federal officials who have allegedly denied a plaintiff's constitutional rights, in their individual capacities. *See Bivens,* 403 at 390-7. Furthermore, a *Bivens* action may be maintained against a defendant only in his or her individual capacity, and not in his or her official capacity. *See Correctional Services Corp. v. Malesko,* 534 U.S. 61, 71-2 (2001); *see also Hafer v. Melo,* 502 U.S. 21, 25 (1991). Accordingly, the Court recommends that to the extent Plaintiff asserts *Bivens* claims against the Defendants in their official capacities, those claims should be dismissed with prejudice.

III.    Deliberate Indifference to Serious Medical Need

Mora states in his complaint that he has specific medical needs which must be met by protein supplements. [1, p. 3.] He claims that denial of these supplements constitutes deliberate indifference to his needs, especially because the defendants received a copy of previous court and doctor's orders. (*Id.*) Mora claims that a court order requires the defendants to provide protein supplements to his diet. (*Id.*) Mora seeks as relief that the prescribed treatment be followed at FCC Yazoo City; that his court costs, legal fees (Mora is proceeding *pro se*[1]),

---

[1]Although Mora filed a motion to appoint counsel in this case, that motion was denied by the Court on January 11, 2012. [4, 11.]

7

damages and punitive damages be paid. (*Id*.)

It is well-established that deliberate indifference to a prisoner's serious medical needs is prohibited by the Eighth Amendment. *Estelle v. Gamble,* 429 U.S. 97, 104-5 (1976). Deliberate indifference is an extremely high standard to meet. A prison official acts with deliberate indifference only if he knows that an inmate faces a substantial risk of serious bodily harm and he disregards that risk by failing to take reasonable measures to abate it. *Farmer v. Brennan,* 511 U.S. 825, 847 (1994). A prison inmate can demonstrate an Eighth Amendment violation by showing that "prison officials 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.' " *Sama v. Hannigan,* 669 F.3d 585, 590 (5th Cir. 2012).

Deliberate indifference to a convicted inmate's serious medical needs can state a civil rights violation, but a showing of nothing more than negligence does not. *Norton v. Dimazana,* 122 F.3d 286, 291 (5th Cir. 1997); *Jackson v. Cain,* 864 F.2d 1235, 1246 (5th Cir. 1989). The Defendants in this case screened Mora for protein deficiency and found his protein level to be within normal limits, although protein supplements were not discontinued in his case. Simple disagreement with the medical treatment received or a complaint that the treatment received has been unsuccessful is insufficient to set forth a constitutional violation. *Johnson,* 759 F.2d at 1238; *Norton,* 122 F.3d at 293. Moreover, Mora does not identify any harm that resulted from any denial or delay of medical or psychological treatment. *See Mendoza v. Lynaugh,* 989 F.2d 191, 195 (5th Cir. 1993). The Court concludes that Mora has failed to prove a claim of deliberate indifference to his medical needs, and recommends that the motion for summary judgment should be granted on any claim of deliberate indifference to serious medical needs.

IV. <u>Qualified Immunity</u>

Mora is asserting a claim against any of the Defendants in their individual capacities. The Defendants assert that they are entitled to qualified immunity. [39, pp. 19-24.] In assessing a claim of qualified immunity, the first determination must be whether the plaintiff has alleged a violation of clearly established constitutional right. *Siegert v. Gilly*, 500 U.S. 226, 231 (1991). If a violation of a right has been alleged, then it must be determined whether the defendants' conduct was objectively reasonable. Even if the conduct violates a constitutional right, qualified immunity is applicable if the conduct was objectively reasonable. *Hare v. City of Corinth, Miss*, 135 F.3d 320, 327 (5th Cir. 1998). Mora claims that his constitutional rights were violated due to deliberate indifference to his medical need for protein supplements to his diet.

The Court does not find that a violation of any clearly established constitutional right occurred as it relates to Mora's treatment. Assuming, *arguendo,* that a violation occurred, the Court finds that the Defendants would still be entitled to qualified immunity because the Defendants' conduct was objectively reasonable. Mora was evaluated soon after his arrival at FCC Yazoo City on September 20, 2011, at which time he indicated that he needed his medications refilled and the high protein snacks renewed. [38-7, p. 2.] Woods complied with the medical directive regarding protein in Mora's diet as soon as he was informed of the need. [38-19, pp. 3-4.] Everest stated that he never denied Mora a snack bag or protein supplement. [38-21, p. 3.] Nicholson stated that he told Mora he could not accept documentation directly from an inmate and that medical diet orders had to come from the Health Services Department. [38-22, p. 3.]

The facts before the Court establish that soon after Mora's arrival at FCC Yazoo City, an appointment was set for assessment, and that Mora refused to allow a blood sample to be taken to allow the staff to determine his protein need. [38-7, p. 2.] Mora was later prescribed

9

multivitamins, an injection, and complete blood work was ordered. [38-9, p. 5.] When he was called for the lab, he refused treatment, indicating on the medical treatment refusal that "there is a court order in place, staff need to follow the court order of March 2008." [38-10, p. 2; 38-11, p. 2.] Chambers states that he evaluated Mora on December 2, 2001. [38-5, p. 3.] Mora complained to Chambers that he wanted his protein supplement added back into his diet, Chambers informed Mora that the supplement was never discontinued by the medical staff at FCC Yazoo City. [38-5, p. 3.]

Each of the defendants presented evidence that they complied with medical orders regarding Mora's dietary needs. Mora must produce evidence that prison officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wonton disregard for any serious medical needs." *Domino,* 239 F.3d at 756. The evidence does not show that his complaints were ignored or disregarded. Mora can point to no detriment to his health in the treatment he received at FCC Yazoo City.

Deliberate indifference is more than mere negligence in failing to supply medical treatment. *See Williams v. Treen*, 671 F.2d 892, 901 (5th Cir. 1982), *cert. denied* 459 U.S. 1126 (1983). Disagreement with medical treatment alone is insufficient to support a claim under § 1983. *See Norton*, 122 F.3d at 292. Further, the law is clear that unsuccessful medical treatment, mere negligence, neglect, nor medical malpractice gives rise to a Section 1983 cause of action. *See Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991); *Mendoza*, 989 F.2d at 193. The Court finds that the Defendants' conduct in this matter was objectively reasonable. Accordingly, the Court recommends that the Defendants are entitled to qualified immunity and that the motion for summary judgment should be granted on any claims brought against the Defendants in their individual capacity.

V.   Claims against Robinson

There is no *respondeat* superior liability in *Bivens* actions. *Cronn v. Buffington*, 150 F.3d 538, 544 (5th Cir. 1998). Thus, in order for a prison official to be liable, they must either be personally involved in the acts that caused the constitutional deprivation, or they must "implement a policy so deficient that the policy itself acts as a deprivation of constitutional rights." *Cronn*, 150 F.3d at 544.

Mora's allegations against Robinson are based on her position as Associate Warden at FCC Yazoo City, and her supervisory responsibility over the Food Services and Health Services Departments. Robinson was never personally involved in Mora's receipt of a snack bag or protein supplement. Mora also fails to prove a policy in place at FCC Yazoo City concerning this type of situation. The Court, therefore, recommends that all claims asserted against Robinson be dismissed. *See Johnson v. Johnson,* 385 F.3d 503, 526 (5th Cir. 2004), *reh'g denied* October 6, 2004.

II.   Motions for Discovery

Mora has two outstanding motions [42, 50] for discovery. Because the Defendants have asserted a qualified immunity defense, Defendants are protected from pretrial discovery. A court must first find "that the plaintiff's pleadings assert facts which, if true, would overcome the defense of qualified immunity." *Ashcroft v. Iqbal,* 556 U.S. 662, 678–9 (2009); *Backe v. LeBlanc*, 2012 WL 3517361 (5th Cir. 2012). The Court has recommended that the Defendants are entitled to qualified immunity in this case, and, as such, further recommends that Mora's motions for discovery be denied. In addition, the Court recommends that all other pending motions [52] be denied as moot.

## CONCLUSION

Based on the foregoing analysis, this Court is of the opinion that Mora has failed to carry the burden of demonstrating that he was not afforded reasonable medical care. It is, therefore, the recommendation of this Court that the Defendants' Motion to Dismiss, or in the alternative, for Summary Judgment [38] should be granted. The Court further recommends that Mora's motions for discovery [42, 50] be denied. In addition, the Court recommends that all other pending motions [52] be denied as moot.

In accordance with the Rules of this Court, any party, within fourteen days after being served a copy of this recommendation, or by no later than September 20, 2012, may serve and file written objections to the recommendations, with a copy to the District Judge, the U.S. Magistrate Judge, and the opposing party. The District Judge at that time may accept, reject or modify in whole or in part, the recommendation of the Magistrate Judge, or may receive further evidence or recommit the matter to this Court with instructions. Failure to timely file written objections to proposed findings, conclusions, and recommendations contained in this report will bar an aggrieved party, except on the grounds of plain error, from attacking on appeal unobjected to proposed factual findings and legal conclusions accepted by the District Court. *Douglass v. United Services Auto Ass'n*, 79 F.3d 1425 (5th Cir. 1996).

This the 6th day of September, 2012.

s/ John M. Roper, Sr.
CHIEF UNITED STATES MAGISTRATE JUDGE