**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION**

JOSE MORA #81024-020                                        **PLAINTIFF**

V.                                    CIVIL ACTION NO. **5:11-cv-178-DCB-JMR**

UNKNOWN ROBINSON,
ASSOCIATE WARDEN;
UNKNOWN WOODS, FOOD
SERVICE ADMINISTRATOR;
UNKNOWN EVEREST ASSISTANT
FOOD SERVICE ADMINISTRATOR;
and UNKNOWN NICHOLSON, FOOD
SERVICE WORKER                                            **DEFENDANTS**

### OPINION AND ORDER

This cause is before the Court on the Report and
Recommendation of the Magistrate Judge [**docket no. 63**] that the
Defendants' Motion to Dismiss or in the Alterative for Summary
Judgment [**docket no. 38**] be granted. The Plaintiff also has number
of Motions pending before the Court [**docket nos. 42, 50, 52, 64,
65, 67, 83, 86**], each of which, with one exception,[1] pertain to his

_____

[1] In a letter Motion [**docket no. 83**], the Plaintiff states
that he never received the Defendants' responses to a number of his
motions, and he requests copies of docket entry nos. 73, 74, 75,
76, and 77. The Government has not opposed this Motion. Because the
Court cannot confirm or deny whether the Plaintiff has received
these documents and because the Plaintiff is proceeding IFP in the
present cause, see Jan. 11, 2012 Order, docket no. 10, the Court
will order the Clerk of Court to provide the Plaintiff with these
documents. However, the Court will proceed to rule on the
Plaintiff's Motions. The Court notes that the content of docket
entries 73-77 raise no new arguments and address matters that have
been throughly briefed by the Plaintiff, i.e., whether he is
entitled to discovery, a hearing, and an attorney. In fact, the
Plaintiff has filed a subsequent Motion, see docket entry no. 86,
that reasserts these arguments.

request that he be appointed counsel and afforded additional discovery. Having carefully considered these Motions, the Report and Recommendation, the Defendant's objections thereto, applicable statutory and case law, and being otherwise fully advised in the premises, the Court adopts the Report and Recommendation in full and denies Plaintiff's other Motions.

**ANALYSIS OF THE PLAINTIFF'S OBJECTIONS**

The question before the Court is whether the Defendants are individually liable for violating the Plaintiff's Eight Amendment rights by denying him food essential to his normal health. The Plaintiff alleges that he needs protein supplements in order to maintain his normal health as a result of undergoing gastric bypass surgery prior to his incarceration but the Defendants denied him these supplements. After considering the Plaintiff's Complaint and the Defendants' Motion, Chief Magistrate Judge Roper found that the Defendants are entitled to summary judgment because the Plaintiff failed to prove that the Defendants committed a constitutional violation and he failed to overcome the Defendants' claim of qualified immunity. See R & R at 7-10.[2]

---

[2] Chief Magistrate Judge Roper also found that the Plaintiff failed to exhaust his administrative remedies but recommended that the Court adjudicate the Plaintiff's claims on the merits rather than dismiss the case without prejudice. The Plaintiff objected to the assertion that he has failed to exhaust. The Court accepts Judge Roper's recommendation and therefore makes no finding on whether the Plaintiff exhausted his administrative remedies. Additionally, Judge Roper also found that Bivens liability does not extend to the Defendants in their official capacities and that

As far as the Court can tell, the Plaintiff's objections to these findings are twofold. First, the Plaintiff claims that the Defendants "conspired" against him by refusing to provide him with protein supplements after he presented certain kitchen staff members with an Order from his sentencing district court directing the BOP to address his dietary needs. Second, the Plaintiff argues that the Defendants acted with "deliberate indifference" by not providing him with the type of protein supplements he wants. Neither of these allegations amounts to a constitutional violation, however.

First, regardless of the effect of the district court's March 27, 2008 Order,[3] the kitchen staff members-as they stated to the Plaintiff—could not respond directly to the Plaintiff's production of a copy of an Order or any other second-hand information provided to them by the Plaintiff. See Decl. of Wood ¶ 4, Ex. 19; Decl. of Nicholson ¶ 5, Ex. 22; Guidelines for Medical Diet ¶ 3, Ex. 20. Moreover, even if the kitchen staff members had the authority to

_____

Defendant Robinson could not be liable strictly as a supervisor. The Plaintiff did not object to these findings, and the Court does adopt these findings. See R & R at 7, 11.

[3] The Court need not consider the effect of this Order in the present suit. See United States v. Mora, No. 2:07-cr-62 (E.D. Va Mar. 27, 08) (stating that "The [BOP] may follow the most recent diet requirements established by Drs. Moor and Shah."). Even if the Order could be construed as binding the BOP to the Plaintiff's previous doctor's orders instead of Dr. Chambers's, the decision of the BOP to follow its local heath professional staff's attempt to address the Plaintiff's health concerns would not constitute an Eight Amendment violation.

accept the Plaintiff's documents—an allegation that the Court does not accept—failure to do so on the ground that they believed they were following proper protocol would not amount to deliberate indifference. <u>Sama v. Hannigan</u>, 669 F.3d 585, 590 (5th Cir. 2012); <u>Norton v. Dimazana</u>, 122 F.3d 286, 921 (5th Cir. 1997).

As for the Plaintiff's complaint about the type of protein supplement he is receiving, it obviously has no merit. The majority of the Plaintiff's frustration appears grounded in the fact that he prefers a protein snack of tuna and sardines to the snack currently being provided to him.[4] <u>See</u> Decl. of Wood ¶ 6, Ex. 19; Decl. of Everest ¶ 6, Ex. 21. The Defendants' failure to provide the Plaintiff with his preferred protein snack is, of course, not cruel and unusual punishment. And, here again, even if the Court were to assume that tuna and sardines were necessary to the Plaintiff's health—a fact which the evidence contradicts—the Defendants did not act with deliberate indifference in failing to heed the Plaintiff's dietary demands without clear instruction from the medical staff that tuna and sardines were essential to his medical needs. <u>See</u> <u>Easter v. Powell</u>, 467 F.3d 459, 463 (5th Cir. 2006).

---

[4] Although neither Party says so, the current dispute appears to stem from the discontinuation of the tuna and sardine snack when the Plaintiff arrived at the Federal Correctional Complex in Yazoo City, Mississippi. It appears that the Plaintiff's previous place of incarceration in Coleman, Florida, provided him with a tuna and sardine snack. <u>See</u> BOP Diet Report, docket no. 66-1 at 2. The diet, however, was discontinued upon his arrival in Yazoo City, and the local BOP doctor, Dr. Chambers, determined that a different protein supplement would suffice to meet the Plaintiff's health needs.

In sum, the record indicates that the BOP staff diligently attended to the Plaintiff's dietary concerns, and once the Plaintiff consented to having his blood-work tested the BOP provided the Plaintiff the protein supplements that its medical staff believed to be necessary to his health. See generally, Decl. of Dr. Chambers, Ex. 5; Decl. of Wood, Ex. 19. There is no objective evidence that the Plaintiff's failure to receive the type of protein supplements he wants puts him at risk of serious harm. See Decl. of Woods ¶ 6. At best, Dr. Chambers is equivocal as to whether the Plaintiff needs protein supplements at all. See Decl. of Dr. Chambers ¶¶ 8-9, Ex. 5.[5] Therefore, despite the Plaintiff's allegations, protests, and requests for discovery,[6] the Defendants could not have been subjectively aware of the risk of harm to the

---

[5] According to Dr. Chambers, even though he believes the Plaintiff questionably claimed to be lactose intolerant and to have a peanut allergy because FCC video footage showed the Plaintiff buying ice cream and peanut butter from the commissary, he prescribed protein supplements that were without dairy or nuts. See id. ¶ 8 n.1.

[6] In his most recent Motions to the Court, the Plaintiff reiterates his desire to see the Defendants' emails, suggesting that there was a conspiracy among the kitchen staff to deny his requests. E.g. Motion for Omnibus Hearing, docket no. 86; Motion for Discovery, docket no. 67. The record, however, indicates that the Defendants have been up-front about the reasons for their denial of the Plaintiff's requests. The Plaintiff even possesses recent emails from the Food Services Administrator instructing his staff to deny the Plaintiff's request because he is not entitled to the type of protein snacks he requests. See June 26, 2012 Email, docket no. 66-1. Even if there were conspiratorial emails, there is no evidence that denying the Plaintiff tuna and sardines caused him serious harm.

5

Plaintiff resulting from their denial of these protein supplements. Easter, 467 F.3d at 463 (citing Farmer v. Brennan, 511 U.S. 825, 829 (1994)). The Plaintiff has not shown how the Defendants' actions rise to the level of deliberate indifference, and therefore the Court agrees with the Report and Recommendation that the Defendants are entitled to qualified immunity on the Plaintiff's claims. Sama, 669 F.3d at 590.

**ORDERS**

Accordingly, **IT IS HEREBY ORDERED THAT** Plaintiff's Report and Recommendation of the Magistrate Judge [**docket no. 63**] is **ADOPTED.** **IT IS FURTHER ORDERED THAT** the Defendants' Motion to Dismiss or in the Alterative for Summary Judgment [**docket no. 38**] is **GRANTED.** A separate document will issue forthwith dismissing the Plaintiff's claims against all Defendants with prejudice. **IT IS FURTHER ORDERED THAT** Plaintiff's Letter Motion for Copies of the Defendants' Responses is **GRANTED.** The Clerk of Court shall provide the Plaintiff with copies of docket entry nos. 73, 74, 75, 76, and 77. **IT IS FURTHER ORDERED THAT** Plaintiff's Motions for Discovery [**docket nos. 42, 50, 67**], Motions to Appoint Counsel [**docket nos. 52, 64**], and Motions for a Hearing [**docket nos. 65, 86**] are **DENIED.**

**So ORDERED,** this the 4th day of March 2013.


                                     /s/ David Bramlette
                                     **UNITED STATES DISTRICT JUDGE**